## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In Re:

    **Settlement Facility Dow Corning Trust,**

                                  **Case No.  13-10971**

    **Candace (Thompson) Schade,**

                                  **Honorable Denise Page Hood**

      **Claimant.**

_____/

## OPINION AND ORDER REGARDING LATE CLAIM REQUEST
## AND
## ORDER DISMISSING ACTION

## I.    BACKGROUND

Claimant Candace Schade, formerly known as Candace Thompson, seeks to submit a late claim before the Settlement Facility–Dow Corning Trust ("SF-DCT") pursuant to the Amended Joint Plan of Reorganization ("Plan") in the Dow Corning Corporation ("Dow Corning") bankruptcy action.

On December 12, 2007, the Court entered an Agreed Order Allowing Certain Late Claimants Limited Rights to Participate in the Plan's Settlement Facility ("Late Claim Agreed Order") which addressed the issue of claimants seeking to submit a late claim before the SF-DCT.  (Case No. 00-00005, Doc. No. 606)  The deadline for filing a Proof of Claim in the bankruptcy action was January 15, 1997 (or February 14, 1997 for foreign claimants) and for filing a Notice of Intent to participate before

the SF-DCT was August 30, 2004.  (3/12/2013 Stipulation and Order to Show Cause, Doc. No. 2, p. 1, n. 1)   The Claimants Advisory Committee ("CAC") and Dow Corning agreed that late claim requests dated after June 1, 2007 or received by the Court after June 5, 2007 are presumptively without merit.  (Case No. 00-00005, Doc. No. 606, Late Claim Agreed Order, ¶ 15)  The CAC and Dow Corning agreed that any claimant filing a late claim request would be required to show excusable neglect as to why the late claim request was submitted after June 1, 2007 or received by the Court after June 5, 2007.  (*Id.*)

After Dow Corning and the CAC reviewed Claimant's late request, the Court entered the March 12, 2013 Stipulation and Order to Show Legal Support and Cause Why Request to File a Late Claim in the Dow Corning Settlement Facility Should not be Dismissed.  Dow Corning and the CAC agree that the SF-DCT records show Claimant did not timely file a Proof of Claim during the bankruptcy proceeding, did not timely submit a Notice of Intent to participate before the SF-DCT, or otherwise submit a request to participate in the Dow Corning bankruptcy case prior to June 2007.  Claimant submitted a response to the Show Cause Order.  The Court addresses the Claimant's reasons below.

## II.    ANALYSIS

Section 8.7 Amended Plan of Reorganization states that this Court retains

2

jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the Settlement and Fund Distribution Agreement ("SFA"), and, to enter orders regarding the Plan and Plan Documents.   (Plan, §§ 8.7.3, 8.7.4, 8.7.5)   The Plan provides for the establishment of the SF-DCT, which is governed by the SFA. (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan.  (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid.  (SFA, § 5.01)  Resolution of the claims are governed by the SFA and corresponding claims resolution procedures in Annex A.  (SFA, § 4.01)

Generally, the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 1141(a); *In re Adkins,* 425 F.3d 296, 302 (6th Cir. 2005).  Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of the plan.  11 U.S.C. § 1127(b).  "In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a).  "An agreed order, like a consent decree, is in the nature of a contract, and

3

the interpretation of its terms presents a question of contract interpretation." *City of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995). A court construing an order consistent with the parties' agreement does not exceed its power. *Id.* at 1228.

The Supreme Court in addressing a late claim filed beyond the deadline set forth in Bankr. R. 3003 used the "excusable neglect" standard under Fed. R. Civ. P. Rule 60(b)(1) to determine whether the Bankruptcy Court had the authority to enlarge time limitations under Bankr. R. 9006(b), which is patterned after Fed. R. Civ. P. 6(b). The Supreme Court approved the following factors that a court may consider in finding excusable neglect: 1) the danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and, 4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993). The Supreme Court disapproved the allowance of a late claim based on the omissions of an attorney. *Id.* at 396. The Supreme Court noted that "clients must be held accountable for the acts and omissions of their attorneys." *Id.* at 396. A client, having chosen a particular attorney to represent him in a proceeding, cannot "avoid the consequences of the acts or omissions of this freely selected agent," and that "[a]ny other notion would be

4

wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* at 397. In assessing a claim of excusable neglect, "the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable." *Id.* (emphasis in original). An attorney or *pro se* litigant's failure to timely meet a deadline because of "[i]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" *Id.* at 392; *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir. 1991). Equitable tolling, although applied sparingly, has been allowed where a claimant has actively pursued judicial remedies by filing a defective pleading during the statutory period or where the complainant has been induced or tricked by an adversary's misconduct into allowing the filing deadline to pass. *Irwin v. Dep't of Veterans Affairs,* 489 U.S. 89, 96 (1990). Courts have been less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his or her legal rights. *Id.*

Addressing the prejudice to the debtor (here, reorganized debtor) factor, the Court finds that allowing this *one* claim to proceed against the SF-DCT would not greatly prejudice the assets under the Plan. However, the history of this bankruptcy action and the post-confirmation bankruptcy proceeding, show that numerous

5

claimants have sought to participate in the settlement program before the SF-DCT.

The settlement fund is a capped fund over a limited time period.  Allowing this one

claim would result in disparate treatment of other claimants who timely submitted

their claims before the SF-DCT.  If the Court were to allow late claimants to proceed,

this would result in substantial costs in terms of claim payments and administrative

expenses.  The funds to be used to pay out these claims and the administrative costs

involved in processing these claims would significantly impact the funds available

to the SF-DCT and to the claimants who timely filed their claims.  The SF-DCT and

Dow Corning would be prejudiced if this and other claims are allowed to proceed

before the SF-DCT.  This factor weighs in the reorganized debtor's favor.

As to the delay and potential impact on the proceedings factor, again, allowing

*one* claim to go forward may not further delay the administration of the Plan since

claims are currently being considered by the SF-DCT.  However, allowing this claim,

along with other claims would further delay the administration of the Plan.

Reviewing late claimants' medical records relating to their claims requires significant

time by the claim reviewers and would impact review of timely claims currently

before the SF-DCT.  This factor weighs in the reorganized debtor's favor.

Regarding the reason for the delay factor, Claimant asserts that she received

silicone implants in 1981.  Claimant states that she had certain paperwork dated 1992

and 1995.  (Doc. No. 1, Pg ID 1) Claimant submitted an MDL-926 claim form.  (Doc. No. 1, Pg ID 7)  On June 24, 1995, Claimant was sent a notice of commencement of a chapter 11 bankruptcy case in the In Re Dow Corning Corp., case number 95-201512.  The notice indicated that a deadline to file proofs of claims had not been established and that once the deadline was set, a notice would be given.  (Doc. No. 1, Pg ID 8-9)  Claimant asserts she never received any subsequent notice, nor did she see any notice from the television, newspaper or magazines.  (Doc. No. 4, Pg ID 27)

Sometime between Claimant's her December 2009 mammogram and her January 2011 mammogram, the right implant ruptured and the left implant showed a tear on the surface.  Both implants were removed and her breasts repaired on February 28, 2011.  (Doc. No. 1, Pg ID 1)  Claimant does not indicate that she had any problems with her implants prior to December 2009.

The Court has previously held that not receiving actual or personal notice or failure to see the published notice of the deadline, does not show excusable neglect for the delay in submitting a claim.  (3/12/2013 Stipulation and Order to Show Cause, p. 4)  The Plan requires "Unmanifested Claims" to be submitted in the bankruptcy action.  (Plan, § 1.18)   An "Unmanifested Claim" is defined as a "Personal Injury Claim of a Claimant who, as of the Effective Date, has not suffered any injury alleged to have been caused, in whole or in party, by a product of the Debtor."  (Plan, §

7

1.176)   Even if the Claimant did not exhibit any problems, until her implants ruptured, Claimant could have filed an "Unmanifested Claim."  The Court has ruled that discovering a condition relating to a Dow Corning product after the deadline to file a Proof of Claim or Notice of Intent to participate does not constitute excusable neglect.  (3/12/13 Stipulation and Order to Show Cause, p. 4)  Additionally, the Court has held that a prior registration in the MDL-926 settlement or confusion as to whether the prior filing before the MDL-926 settlement constitutes a timely filing in this case, is not sufficient to establish a timely Proof of Claim or Notice of Intent to participate in the Dow Corning bankruptcy action. (*Id.*)

Reviewing Claimant's reasons for the delay in submitting a claim, the Court finds that this factor weighs in favor of the reorganized debtor.  Receiving no further information regarding the bankruptcy action, or having an unmanifested claim, or believing that a prior filing before the MDL-926 was sufficient to file a claim, does not constitute excusable neglect.

There has been no showing of bad faith by the Claimant and this factor weighs in her favor.

Weighing the factors noted above, the Court finds Claimant has not shown excusable neglect as to why her late claim should be allowed to be submitted before the SF-DCT.

8

## III.   CONCLUSION

Accordingly, for the reasons set forth above,

IT IS ORDERED that Claimant Candace (Thompson) Schade's request to submit a late claim **(Doc. No. 1)** is DENIED.

IT IS FURTHER ORDERED that this matter is DISMISSED with prejudice.


S/Denise Page Hood
Denise Page Hood
Chief Judge

Dated:  September 30, 2016


## CERTIFICATE OF SERVICE/MAILING


I certify that a copy of this document was served  on September 30, 2016, by electronic or ordinary mail to all parties in interest.

S/Julie Owens
Deputy Clerk
(313) 234-5090

9